UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LIONEL R. BEARD,

    Defendant.

CASE No. 1:05-cr-20

HON. ROBERT J. JONKER

_____/

## OPINION AND ORDER

### INTRODUCTION

The matter before the Court is on Defendant Beard's pro se motion for compassionate release. (ECF No. 820). For the reasons that follow, the Court determines that Defendant has failed to identify an extraordinary and compelling basis for relief that is consistent with the applicable policy statements issued by the Sentencing Commission. Even if Defendant had identified such a basis, the Section 3553(a) sentencing factors augur against early release. Accordingly, the motion is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

*1. Trial, Sentencing and Appeal*

Defendant was convicted following a jury trial on thirteen counts for his role in a conspiracy to distribute controlled substances in the area of Lansing, Michigan. Five of those counts were grouped together and were used to determine Defendant's sentencing guideline

range.[1] For purposes of sentencing, Defendant began with a base offense level of 40, which was determined in part based on the quantity of narcotics that was attributable to him. (PSR ¶ 157). Two additional levels were added for obstruction, namely, Defendant's use of physical force against a witness, Willie Frazier. This resulted in a total offense level of 42. (PSR ¶ 187). Defendant scored six criminal history points based on his convictions. A further three points were added based on the versions of U.S.S.G. §§ 4A1.1(d) and (e) in effect at the time of Defendant's sentencing proceeding. This resulted in a criminal history score of nine, corresponding to CHC IV, and a guideline range of 360 months to life imprisonment on the chart.

Defendant, through counsel, objected to portions of the PSR at sentencing. In particular, counsel objected to the portions of the PSR that noted two individuals had died as a result of overdosing on drugs allegedly supplied by the DTO. The PSR expressly noted there was insufficient evidence linking Defendant to the deaths of those individuals. (PSR ¶ 150). The Court denied the objections, and added that there was no enhancement in the PSR related to those matters in any event. Defendant then requested a sentence at the bottom end of the guideline range—360 months. The Court found that the record did not support a sentence that low. The Court articulated several reasons—including Defendant's assault against a witness—for doing so and proceeded to sentence Defendant to a within guideline range of total term of 420 months imprisonment.[2] Judgment entered on October 20, 2006.

---

[1] As detailed in the PSR, the other counts were determined to be lesser included offenses to the criminal enterprise offense charged in Count 51 on which Defendant was found guilty. Accordingly, those convictions were not used in determining Defendant's sentence. (PSR ¶ 155).
[2] In particular, and after accounting for certain statutory penalty ranges, Defendant was sentenced to 120 months on Counts 15, 39, and 40; 420 months on Count 51; and 240 months on Count 54, all to be served concurrently.

Defendant appealed the Court's Judgment. The Sixth Circuit Court of Appeals affirmed Defendant's convictions and sentence. *See United States v. Beard*, 318 F. App'x 323 (6th Cir. 2008).

*2. Section 2255 Motions*

In 2010, Defendant filed a Section 2255 motion that argued he was denied his right to effective assistance of counsel and his rights to due process and equal protection. *See Beard v. United States*, No. 1:10-cv-411 (W.D. Mich. filed Apr. 27, 2010). Among other things, Defendant argued that his counsel was ineffective for failing to cross-examine Mr. Frazier during trial with an incident report that indicated that Mr. Frazier had fallen when he sustained his injuries—which was inconsistent, Defendant said, with the government's theory that Defendant had assaulted Mr. Frazier. *See* Case No. 1:10-cv-411 at ECF No. 13-1. The Court rejected this and all other arguments in a February 28, 2011, decision. *See id.* at ECF No. 14 (opinion). The Sixth Circuit Court of Appeals declined to issue a Certificate of Appealability. *Beard v. United States*, No 12-1961 (6th Cir. Feb. 6, 2013) (order). The Sixth Circuit Court of Appeals has since denied two separate requests for authorization to file a second or successive motion to vacate. *See In re Beard*, No. 17-1885 (6th Cir. Mar. 19, 2018) (order); *In re Beard*, No. 18-1624 (6th Cir. Mar. 1, 2019) (order).

*3. Motions in Criminal Case*

Defendant has also sought miscellaneous relief in his criminal case in this Court. On October 15, 2013, he filed a motion challenging the inclusion of criminal monetary penalties in the Court's Judgment. (ECF No. 765). The Court denied the motion on October 18, 2013 (ECF No. 768). A similar motion, and a subsequent motion for reconsideration, was denied on November 26, 2013, and January 14, 2014, respectively. (ECF Nos. 772, 774). On March 16,

2015, Defendant sought a reduced sentence under Guideline Amendment 782, which was made retroactive by the Sentencing Commission. (ECF No. 779). The Court denied the motion because Defendant's guideline range did not change with the retroactive amendment. (ECF Nos. 793, 794).

On June 5, 2020, Defendant filed his first motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 801). The basis of the motion was the COVID-19 pandemic. The Court denied the motion on June 9, 2020. The Court observed that a generalized risk of contracting the COVID virus and the potential to develop more severe symptoms was not an extraordinary and compelling reason for compassionate release. Furthermore, the Court determined that early release would be inconsistent with the Section 3553(a) sentencing factors. Defendant was a leader of a large drug trafficking operation that wreaked havoc in Lansing for years. Defendant's criminal history established that he was a dangerous man with a history of carrying firearms and causing violence. Reducing the sentence, the Court observed, would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense. The Court believed Defendant remained a danger the community. (ECF No. 802, PageID.4640-4641).

On May 2, 2022, Defendant sought a reduced sentence under Section 404 of the First Step Act of 2018. (ECF No. 809). The Court denied the motion on December 22, 2022, because Defendant had not been convicted of a covered offense under the provision, and thus was not eligible for a sentence reduction. Even if Defendant were eligible, the Court observed that despite some improvements while in custody, his original sentence of 420 months imprisonment remained consistent with the section 3553(a) factors. (ECF No. 815).

*4. Instant Compassionate Release Motion*

On July 12, 2024, Defendant filed a second motion for compassionate release. (ECF No. 820). The Government has responded (ECF No. 824) and Defendant has filed a reply. (ECF NO. 825). The matter is ready for decision.

## LEGAL STANDARDS

Title 18 U.S.C. § 3582(c)(1)(A)(i) permits courts, when "warrant[ed]" by "extraordinary and compelling reasons" to reduce a defendant's sentence. Under *United States v. Alam*, 930 F.3d 861 (6th Cir. 2020), the Court must first be satisfied that defendant has exhausted his compassionate relief request in the BOP. If so, then under *United States v. Ruffin*, 978 F.3d 1000 (6th Cir. 2020), the Court must proceed with a "three-step inquiry." *See United States v. McCall*, 56 F. 4th 1048, 1054 (6th Cir. Dec. 22, 2022) (en banc). Under this approach, the Court must first determine whether the defendant has identified an extraordinary and compelling basis for relief. Second, courts must "confirm that any sentence reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)). And third, "defendants must persuade the district judge to grant the motion after the court considers the § 3553(a) factors." *Id.*

Until recently this three-step analysis was, in practice, a two-step analysis as to defendant-filed motions. This is because when the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("the First Step Act") changed the compassionate release statute to permit defendant-filed compassionate release motions, the Sentencing Commission had not updated its policy statement to include defendant-filed motions. *McCall*, 56 F.4th at 1054. Nor did the Commission have a quorum to act at the time. Thus, in *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020), the Sixth Circuit simplified the analysis by concluding that U.S.S.G. § 1B1.13 was not a policy statement

5

that limits a court's consideration of a compassionate release motion.  This eliminated, for a time, the need for this Court to analyze a defendant's request for consistency with U.S.S.G. § 1B1.13.  *See also United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (reaffirming *Jones's* holding that §1B1.13 at the time was "not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions.").

In August 2022, the Sentencing Commission reached a quorum, and in the spring of 2023 the Commission promulgated a proposed amendment to U.S.S.G. § 1B1.13—the policy statement that elaborates on the criteria for compassionate release—to apply the policy statement to defendant-filed motions.  *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28254, 28254–59 (May 3, 2023).  The amendment has since taken effect and now appears in the current version of the sentencing guidelines.  *See* U.S.S.G. § 1B1.13 (2024).  Accordingly, the Court must now also confirm that any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission.  The sections of the policy statement regarding extraordinary and compelling reasons relevant to Defendant's motion reads as follows:

> 5. Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the other reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).[3]
>
> 6. Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the

---

[3] Those paragraphs related to medical circumstances, age, family circumstances, and victim of abuse.  *See* U.S.S.G. § 1B1.13(b)(1)-(4).

>     defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b).

## DISCUSSION

Defendant musters several arguments in support of his compassionate release. Some of Defendant's arguments are more developed than others. For example, Defendant merely alludes to an undefined change in Department of Justice policy without identifying that policy or even attempting to explain how that policy might result in a different sentence.[4] Other arguments appear ill tailored for a compassionate release motion. In particular, Defendant cites a recent retroactive guideline amendment that he says, if applied, would result in a lower guideline range. But such motions usually arise under a separate statutory provision—18 U.S.C. § 3582(c)(2)—not Section 3582(c)(1)(A). Defendant also believes the BOP has not awarded certain time credits that he believes he is due. Again, however, a separate statutory provision—namely the habeas statute at 28 U.S.C. § 2241—provides the proper pathway for Defendant to pursue this type of relief. Even considering these arguments here, however, Defendant does not demonstrate he is entitled to any relief. Defendant's remaining argument is his belief that if sentenced today the sentencing judge would not impose a 420-month sentence; that he should be resentenced accordingly; and that post-sentencing rehabilitation augurs towards a further reduction. The record does not support Defendant's argument. Indeed, it appears to at least partially overlap with arguments that

---

[4] A policy, of course, is not a change in actual sentencing law. And for this reason, this Court has previously denied compassionate release motions raising similar arguments that rely on a change in DOJ policies. *See United States v. Baskin*, No. 1:17-cr-228 ECF No. 434, PageID.3054 (W.D. Mich. Sept. 16, 2024) ("The proposed legislation is not a change in the current law. Neither is the memorandum.")

7

Defendant raised, and lost on, in his direct appeal and habeas proceedings. The compassionate release statute does not provide for another bite at the apple. All this is by way of overview. The Court more fully addresses each argument in turn below

1. *Change in DOJ Policy*

At several points in his motion, Defendant alludes to an undefined change in DOJ policy. This falls far short of meeting Defendant's burden of showing an extraordinary or compelling reason for compassionate release. Moreover, to the extent Defendant seeks to equate a purported change in policy with a change in law for purposes of meeting the policy statement at U.S.S.G. 1B1.13(b)(6), the Court is not persuaded. A policy is not a change in actual sentencing law. And for this reason, this Court has previously denied compassionate release motions raising similar arguments that rely on alleged changes in DOJ policies. *See United States v. Baskin*, No. 1:17-cr-228 ECF No. 434, PageID.3054 (W.D. Mich. Sept. 16, 2024) ("The proposed legislation is not a change in the current law. Neither is the memorandum.")

2. *Retroactive Guideline Amendment*

Defendant also contends he should receive a reduced sentence based on Guideline Amendment 821. That amendment, now codified in the 2023 version of the Sentencing Guidelines, contains two retroactive provisions. Part A of Amendment 821 decreases "status points" by one point for defendants with seven or more criminal history points and eliminates "status points" for defendants with six or fewer criminal history points. "Status points" are those points that were applied under then United States Sentencing Guideline (U.S.S.G.) § 4A1.1(d) if the defendant committed his or her federal offense while on probation, parole, supervised release, imprisonment, work release, or escape status. Part B of Amendment 821 provides for a decrease of two offense levels for "zero-point offenders" (no criminal history points), whose offense did

8

not involve specific aggravating factors.  These changes are retroactive as of November 1, 2023, and have an effective date of February 1, 2024.

Defendant's argument here is procedurally improper.  Motions for a reduced sentence arise under 18 U.S.C. § 3582(c)(2).  This is a separate vehicle from a motion under Section 3582(c)(1)(A), which is at issue here.  But even leaving that to the side, Defendant is not eligible for a sentence reduction under that amendment.  Defendant's PSR reflects that he received six raw criminal history points based on his convictions.  Defendant received a further two "status" points and a third "recency" point under the version of U.S.S.G. § 4A1.1(d) in effect at the time of his sentencing.  The total of nine points was enough to correspond to CHC IV.  Defendant apparently believes that under the amendment all three points related to status and recency would fall away, meaning that he would only score six points, which would correspond to CHC III.  The Court is not so sure.  The "recency" points previously added to a criminal history through § 4A1.1(e) were eliminated by nonretroactive Amendment 742, which became effective November 1, 2010.  Those points therefore were not eliminated by Amendment 821, which became effective well over a decade later.  The Sentencing Commission chose to make Amendment 821 retroactive while designating Amendment 742 nonretroactive.  Thus, under Guideline Amendment 821, Defendant would still score at least 7 points, which is enough to correspond to CHC IV, the category that originally applied to him.

But even if the Court is wrong about this, Defendant's guidelines would not change because his total offense level of 42 and CHC III is still enough to correspond to a guideline range of 360 months to life on the chart, the range that originally applied to him.[5]  The policy statement at

---

[5] As the government notes, this is true even if Defendant's total offense level is reduced to 40, which would apparently be the case if Defendant were sentenced today to account for certain changes in how narcotic quantities score.

U.S.S.G. § 1B1.10(a)(1) conditions eligibility for a reduced sentence in cases "in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guideline's Manual[.]" The application note to that section goes on to make clear that "[e]ligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment . . . that lowers the applicable guideline range." *Id.* at n.1(A). "Accordingly, a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if: . . . an amendment . . . is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range[.]" *Id*

Because Guideline Amendment 821 does not have the effect of lowering defendant's applicable guideline range, he is not eligible for any relief under the amendment, and has certainly not demonstrated an extraordinary and compelling basis for compassionate release.

3. *Time Credits*

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") implemented a number of prison and sentencing reforms. In particular, Section 102(b)(1) amended 18 U.S.C. § 3624 by adding a subsection (g), which is related to the First Step Act's creation of an earned time credit system. Earned time credit is given for "successfully complet[ing] evidence-based recidivism reduction programming or productive activities." First Step Act § 101(a), 132 Stat. at 5198. In his next argument, it appears Defendant believes that these changes have not been applied retroactively to the portion of the sentence he has already served, and that it the changes were applied in such a manner, the BOP would calculate an earlier release date.

Defendant fails to demonstrate an extraordinary and compelling reason for compassionate release. Numerous courts, including this one, have observed that challenges to the computation of

10

time credits must be brought in habeas proceedings; they do not amount to extraordinary or compelling reasons for compassionate release. *See United States v. Miles*, No. 1:17-cr-108 (W.D. Mich. Apr. 7, 2023); *see also United States v. Anderson, No. 1:13-CR-091(3),* 2023 WL 4353546, at *3 (S.D. Ohio July 5, 2023) ("the Court cannot award Anderson 365 days of earned-time credits under the First Step Act, and the Court does not find this argument to be an extraordinary and compelling reason to grant him compassionate release.")

Defendant's argument also fails because he has failed to show that a sentence reduction would be consistent with the applicable policy statements issued by the Sentencing Commission. Recall that under Section 1B1.13(b)(6), Defendant must show, *inter alia*, a change in law, that "would produce a gross disparity between the sentence being serve and the sentence *likely to be imposed at the time the motion is filed*." U.S.S.G. § 1B1.13(b)(6) (emphasis added).[6] Defendant has not demonstrated he meets the plain language of this policy statement because his argument does not even touch on a sentence that is likely to be imposed. Instead, Defendant's argument relates to how the BOP might execute a sentence differently if Defendant's sentence were imposed today rather than in 2006. But Defendant has not demonstrated how the actual sentence imposed would be any different under the First Step Act's changes to Section 3624. For this added reason, he is not entitled to any relief under the compassionate release statute.

---

[6] In *McCall*, the Sixth Circuit Court of Appeals held that "nonretroactive changes in sentencing law cannot be 'extraordinary and compelling reasons' that warrant relief" under § 3582(c)(1)(A)(i). 56 F.4th at 1055. As the Government notes in its brief, the policy statement at Section 1B1.13(b)(6) takes a different position by creating an exception to this rule. The Court need not take a position on the matter for purposes of deciding this motion.

*4. Reweighing Sentencing Decision*

Defendant's remaining argument is that certain observations and decisions made by the sentencing judge during the sentencing hearing lacked a basis in fact. Defendant highlights comments relating to his criminal history; his dangerousness; his assault on a witness; the deaths of two drug addicts; and his failure to pay child support. Defendant speculates that if the Court accepts certain arguments he now makes, it might fashion a different sentence. In essence, Defendant seeks a plenary resentencing that, he hopes, would result in a lesser sentence. The problem for Defendant is that the compassionate release statute "is not an open-ended invitation to simply relitigate and reweigh the § 3553(a) factors based on facts that existed at sentencing." *United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021). But that is precisely what Defendant is attempting to do here by attempting to relitigate the sufficiency of the evidence underlying his convictions and sentence.

Indeed, these sentencing arguments are those that could have been—and sometimes were—raised at Defendant's sentencing hearing, on direct appeal, and in a collateral attack. This matters because the Sixth Circuit Court of Appeals has determined that compassionate release does not serve as an end run around habeas. *See McCall,* 56 F.4th at 1058. *Hunter* and the habeas bar articulated in *McCall* is a sufficient basis to find that Defendant has not demonstrated an extraordinary and compelling reason for compassionate release. But even on the merits, none of the arguments Defendant presents rises to an extraordinary or compelling reason for compassionate release.

For example, Defendant only baldly asserts that if sentenced today, the sentencing judge would not impose a fine to cover nonpayment of child support. But the compassionate release statute relates to a reduction in the term of imprisonment; it does not provide a basis to revisit the

imposition of a fine. *See United States v. Weiss*, No. 21-CR-00457 (PMH), 2022 WL 10667255, at *2 (S.D.N.Y. Oct. 17, 2022) ("Congress created subchapter C of chapter 227 [of Title 18] to cover "fines" and subchapter D to cover "imprisonment." Section 3582(c)(1)(A) falls in the latter bucket and has nothing to do with the former.").

Defendant also claims the sentencing judge erred in holding him responsible for the deaths of two individuals. But that is not what the Court observed at sentencing. Instead, the Court remarked the deaths had no impact on the guidelines calculation and went on to state when imposing a sentence that "[w]hether or not he was responsible for the immediate deliveries that caused the death is beside the point. The point is he knew he was dealing in deaths when he was dealing heroin." (Sentencing Tr. at 14, ECF No. 587, PageID.3536). This conclusion is well supported by the trial testimony and detailed in the PSR.

Defendant also contends that he did not assault a witness. Again, however, there is ample support in the record for the assault, including the testimony of Mr. Frazier. Moreover, Mr. Frazier was thoroughly cross-examined on the matter. Defendant says his attorney should have relied on an incident report from the Newaygo County Jail in which it was recorded that Mr. Frazier's injuries stemmed from a fall. This was an argument that was raised, and rejected, in Defendant's Section 2255, as part of Defendant's ineffective assistance of counsel claim. As the Court observed in that decision, Defendant Frazier testified to the assault during Defendant's criminal case, and admitted on both direct and cross examination that he lied to the officer who completed the incident report relies on here. *Beard v. United States*, No. 1:10-cv-411, ECF No. 14, PageID.141 (W.D. Mich. Feb. 28, 2011).

Defendant also quibbles with certain observations about his criminal history and gun use. Primarily he makes straw man arguments about brandishing and discharge and thus fails to establish anything approaching an extraordinary and compelling reason for compassionate release.

For these reasons, Defendant's arguments fail to demonstrate an extraordinary and compelling basis for compassionate release.

5. *Rehabilitation*

Defendant finally argues that compassionate release is warranted based on his rehabilitation while in custody. Defendant states that he has taken various educational programs, qualifies for good time credit, and is ready to reenter society. These efforts are commendable, but they do not, standing alone, amount to an extraordinary or compelling basis for compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d). Nor do they significantly alter the Section 3553 factors weighed at his sentencing.

Indeed, the Section 3553 sentencing factors augur against early release. The Court continues to believe that Defendant's sentence is correct based on a full consideration of the sentencing factors. Reducing his sentence further would undermine the purposes of the original sentence. It would also fail to reflect the serious nature of the offense and to promote specific and general deterrence.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that Defendant's pro se motion for compassionate release (ECF No. 820) is **DENIED.**

Dated:   January 6, 2025              /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      UNITED STATES DISTRICT JUDGE